44513. CENTRAL CHEVROLET, INC. v. LAWHORN et al.
44514. CENTRAL CHEVROLET, INC. v. BRAY et al.

WHITMAN, Judge. This is the second appearance of these cases in this court. The cases are suits for damages arising out of the same automobile collision. On the first appearance we held the plaintiffs' complaints sufficiently stated a claim for which relief could be granted as against a motion to dismiss by defendant Central Chevrolet, Inc. *Bray v. Central Chevrolet, Inc.,* 118 Ga. App. 493 (164 SE2d 286).

The present appeal is by Central Chevrolet, Inc. from a denial of its motion for summary judgment in both cases. The complaint in both cases asserts liability against Central Chevrolet, Inc., in that "on August 21, 1966 . . . the defendants, Frank B. Smith and Wade Nixon, occupied a 1966 Chevrolet automobile owned by defendant Central Chevrolet, Inc., the said Smith and Nixon being at said time agents, servants and employees of Central Chevrolet, Inc., acting within the scope of said employment and for the benefit of

Central Chevrolet, Inc.," and that the 1966 Chevrolet negligently ran into the car in which the plaintiffs were riding.

The motion for summary judgment by Central Chevrolet, Inc. (hereafter called "Central") in each case is based on the pleadings, the affidavit of defendant Frank B. Smith, the affidavit of defendant Wade Nixon, and the affidavit of Douglas B. Tyler, the vice president of Central Chevrolet.

Central's answer to the complaints denied that it owned the 1966 Chevrolet automobile and denied that defendants Smith and Nixon were, at the time, its agents, servants and employees acting within the scope of their employment and for the benefit of Central.

The affidavit of Tyler is made under oath and he swears that Central had no interest whatsoever in the 1966 Chevrolet; that the duties of Smith and Nixon terminated at the time they left work on the afternoon of Saturday, August 20, 1966; that they had no instructions or duties to perform on Sunday, August 21, 1966, and that they had no further duties of any kind or nature whatsoever with Central until the resumption of work on Monday morning, August 22, 1966.

The affidavit of Smith is made under oath and he swears that he owned the 1966 Chevrolet involved, and that he purchased it on August 19, 1966, from Wade Nixon (a copy of a "Bill of Sale" of a 1966 Chevrolet from Nixon to Smith, which Smith swears is a true and correct copy, is attached to the affidavit.) He further swears that his employment with Central terminated at 7:30 p.m. on Saturday, August 20, 1966, and that he had no further duties or responsibilities with Central after that time until he arrived at work on Monday of the following week; that about 9 on Saturday evening, August 20, 1966, he went to Sabo's Tap Room on Memorial Drive in Atlanta, Georgia, where he consumed alcoholic beverages and did not leave there until 12 midnight, the closing time; that he does not remember what happened thereafter, but remembers awakening at the hospital after the collision and understands that he was a passenger in a car which was involved in a collision about 1 a.m. on Sunday, August 21, 1966, but he has no recollection of the accident and does not know who was driving his car at the time but he knows he was not driving because he was unable to drive. He further swears that he knows that Wade Nixon was not present on Saturday evening or early Sunday morn-

652

ing at Sabo's Tap Room; that Nixon was not in his (Smith's) 1966 Chevrolet at the time of the occurrence. Finally he swears that at the time of the accident he was not acting in any manner on behalf of Central or pursuant to their instructions.

The affidavit of Nixon is made under oath and he swears that he was employed at Central and left work on Saturday, August 20, 1966, about 4 p.m., and that he and two others drove to Hartwell, Georgia; that he drove in his daughter's 1962 Corvair to Hartwell and he spent the night there with Mr. and Mrs. Hershel Thompson and returned to Atlanta about 6 or 7 p.m. on Sunday evening, August 21, 1966. He further swears that on June 30, 1966, he purchased the car involved from Central and on August 19, 1966 he sold it to Smith, and that he (Nixon) had no interest in it at the time of the collision. A copy of a new car invoice from Central to Nixon is attached to the affidavit and Nixon swears it is a true and correct copy. *Held:*

1. As pointed out above, the liability of Central to the plaintiffs is predicated upon the allegation that Smith and Nixon were agents, servants and employees of Central acting within the scope of their employment in an automobile owned by Central at the time it negligently ran into the plaintiffs.

The affidavits show that the working hours and employment duties of Smith and Nixon ended on Saturday afternoon and did not commence again until Monday morning. They show that Smith was engaged in activities of personal gratification, and that Nixon was in another town at the time the accident occurred.

This evidence pierces the allegation that Smith and Nixon were acting within the scope of their employment at the time of the accident. It pierces the allegation that Central owned the car. With regard to the matter of ownership, the appellee contends that only the certificate of title required to be issued by the Motor Vehicle Certificate of Title Act (*Code Ann.* § 68-401a et seq.; Ga. L. 1961, p. 69 et seq., as amended) would show ownership, and that inasmuch as no certificate was produced, there was no evidence of who held the title. "Ownership" for the purpose of finding liability (provided, of course, the other requisite elements are shown, see *Young v. Kickliter,* 213 Ga. 42 (1) (96 SE2d 605), and *Cambron v. Cogburn,* 116 Ga. App. 373 (2) (157 SE2d 534)) is more

properly determined by who claims ownership and has possession or the authority to direct its use. 60A CJS 934, Motor Vehicles, § 428 (1) (1969). But even were we to find that the new car invoice from Central to Nixon and the bill of sale from Nixon to Smith were not sufficient to pierce the allegation as to ownership, the allegation of scope of employment has been pierced and a showing of both is required for liability in a case such as this. See *Young v. Kickliter*, 213 Ga. 42, 43 (1), supra.

The evidence by Central pierced at least one essential allegation or element required for recovery and thus made out a prima facie right to the summary judgment it sought. There was no evidence offered in opposition to the motion. There was simply no issue for trial on whether Nixon and Smith were acting within the scope of their employment. All the evidence is that they were not.

2. The affidavits do not contain a statement in the jurat that they are made upon "personal knowledge." However, they contain averments such as would be admissible in evidence and such as are obviously of personal knowledge and thus are proper for consideration. *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 5 (126 SE2d 442).

It was error to deny the defendants' motion for summary judgment in both cases.

*Judgments reversed. Jordan, P. J., and Hall, J., concur.*

ARGUED JUNE 4, 1969—DECIDED NOVEMBER 14, 1969.

*Swift, Currie, McGhee & Hiers, W. Wray Eckl,* for appellant. *Neil L. Heimanson, John L. Respess,* for appellees.